UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAVIER DEJESUS DELUNA,<br><br>Defendant(s). | Case No. 1:19-cr-00363-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant's Motion to Dismiss. (Dkt. 18.) Defendant contends that his Sixth Amendment right to a speedy trial has been violated by the delay between his indictment on November 19, 2019, and his trial, which is set for September 27, 2021. (*Id.*) For the reasons set forth below, the Court denies the motion.

## BACKGROUND

On November 13, 2019, Defendant was indicted in a one count indictment that alleged that, on or about January 23, 2019, Defendant "knowingly and intentionally distributed a mixture and substance containing a detectable amount of methamphetamine," in violation of 21 U.S.C. § 841(a)(1). (Dkt. 1.) The Indictment

MEMORANDUM DECISION AND ORDER - 1

was filed with the Court, under seal, on November 14, 2019, and an arrest warrant was issued. (*See* Dkts. 1, 2, 3, 4.) The Order sealing the indictment directed the Clerk of the Court to unseal the Indictment "without any further Order of the Court as soon as any named defendant in the indictment is taken into custody, or no later than November 20, 2019, at 8:00 a.m., MST."[1] (Dkt. 3.) Despite this directive, the Indictment remained sealed until August 5, 2021.

At the time of the alleged distribution of methamphetamine in January 2019, and the time the Indictment was issued on November 13, 2019, Defendant was on probation in at least one state case. By the time the Indictment was issued, Defendant appears to have been, for the most part, in compliance with his state probation. He had, however, been charged with state crimes of resisting and obstructing and failure to have insurance, both misdemeanors, about the same time that the Indictment was issued.

On November 18, 2019, a few days after the Indictment was issued, Defendant was arrested for violating probation by committing the new state law crimes of resisting and obstructing and failure to have insurance, a felony burglary

---

[1] The Court notes that having a date certain for the unsealing of an indictment under these circumstances is unusual. Generally an order sealing an indictment in a criminal case where an arrest warrant is outstanding will simply provide that the indictment and case is to be unsealed upon the arrest of the defendant.

charge, and the distribution of methamphetamine charge at issue in the present case (also a felony). Defendant was detained on the pending state law charges at the Canyon County Jail.

A federal detainer also issued on November 18, 2019, and a copy of that detainer was provided both to Defendant and to the Canyon County Jail. The detainer provides the following:

> Please accept this Detainer against the above-named subject who is an unsentenced prisoner currently in your custody. The United States District Court for the District of Idaho has federal criminal proceedings against the named defendant based on the following offense(s):
>
> Drug Trafficking 21 USC 841
>
> Prior to the subject's release from your custody, please notify this office at once so that we may assume custody if necessary. If the subject is transferred from your custody to another detention facility, we request that you forward our Detainer to said facility at the time of transfer and advise this office as soon as possible.
>
> The notice and speedy trial requirements of the Interstate Agreement on Detainers Act do NOT apply to this Detainer because the subject is not currently serving a sentence of imprisonment at the time the Detainer is lodged. IF THE SUBJECT IS SENTENCED WHILE THIS DETAINER IS IN EFFECT, PLEASE NOTIFY THIS OFFICE AT ONCE.

(Dkt. 19-1.)

On November 20, 2019, the U.S. Attorney's Office issued a press release listing Defendant as one of 15 "West Side Loma Gang Members and Associates

Indicted in Federal Court."

Defendant remained at the Canyon County Jail for several months, making appearances on three different pending state court criminal cases: (1) a felony probation violation on which Defendant was ultimately sentenced to a three-year fixed term; (2) another felony probation violation on which Defendant was also sentenced; (3) and the new misdemeanor offense of resisting and obstructing. On December 2, 2019, Defendant's probation was revoked in his state case(s). Defendant is not parole eligible on the felony probation violation convictions until October 2022. *See* https://www.idoc.idaho.gov/content/prisons/offender_search/detail/122330 (last accessed September 16, 2021).

On February 12, 2020, Defendant was sentenced on the third case—the misdemeanor resisting and obstruction charge. Following the third sentencing, Defendant was transferred to the custody of the Idaho Department of Corrections (IDOC). Defendant was not, however, immediately transported to an IDOC facility, but was, instead, transported to the Gem County Jail, where he was incarcerated for approximately one year. Unfortunately, Canyon County Jail failed to provide a copy of the detainer to either IDOC or to the Gem County Jail as instructed by the detainer.

On February 17, 2021, Defendant was transferred from the Gem County Jail

to an IDOC facility. Gem County Jail apparently had not been provided with a copy of the detainer and thus did not provide a copy of the detainer to IDOC as instructed in the detainer, nor did Gem County Jail contact the Government and inform the Government of the transfer of Defendant out of the Gem County Jail and to an IDOC facility.

The IDOC was not provided with a copy of, or otherwise informed of, the detainer, and a detainer was thus not placed on Defendant when he was transferred to the IDOC facility. It was not until after a writ of habeas corpus ad prosequendum was issued in this case on July 13, 2021, that a copy of the detainer was provided to IDOC.

Defendant made his initial appearance in the case on July 28, 2021. As noted previously, Defendant's trial is set to begin on September 27, 2021.

## ANALYSIS

"The Sixth Amendment guarantees that in all criminal prosecutions the accused shall enjoy the right to a speedy trial." *Doggett v. United States*, 505 U.S. 647, 651 (1992). A speedy trial challenge is subject to the four-part inquiry set out in *Barker v. Wingo* 407 U.S. 514 (1972). Under this inquiry, the Court is to consider four factors in determining whether a defendant's constitutional right to a speedy trial has been violated: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's prior assertion of the right, and (4) the prejudice

resulting from the delay." *United States v. Alexander*, 817 F.3d 1178, 1181 (9th Cir. 2016).

### A.  Length of Delay

"The length of the delay is a 'threshold' factor, and a sufficiently lengthy delay 'necessitates an examination of the other three factors.' " *Alexander*, 817 F.3d at 1181. "To trigger a speedy trial inquiry, an accused must show that the period between the indictment and trial passes a threshold point of 'presumptively prejudicial' delay." *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993) (quoting *Doggett*, 505 U.S. at 651-52). "If this threshold is not met, the court does not proceed" with the other three factors. *Id.* On the other hand, if the threshold showing is made, the court moves on to consider the remaining three factors. *Id.*

Here, the length of the delay from the issuance of the Indictment to the current trial date (September 27, 2021) is 22 months and 14 days. The Court has no trouble concluding that this delay is sufficiently long to meet the presumptively prejudicial threshold and thus trigger inquiry into the remaining three factors. *See Doggett* 505 U.S. at 652 n.1 (noting that the lower courts have generally found delay approaching one year to meet the presumptively prejudicial threshold); *Beamon*, 992 F.2d at 1012-13 (17-month and 20-month delay long enough to pass threshold test and trigger the *Barker* speedy trial inquiry).

### B. Reason for the Delay

"The second factor, the reason for delay, is 'the focal inquiry.'" *Alexander*, 817 F.3d at 1182. The burden is on the Government to explain the pretrial delay. *McNeely v. Balans*, 336 F.3d 822, 827 (9th Cir. 2003) ("We likewise hold that the prosecution bears the burden of explaining pretrial delays."). "If the government can show that the delay was wholly justifiable because it proceeded with reasonable diligence, the defendant's speedy trial claim generally cannot succeed in the absence of a showing of actual prejudice resulting from the delay." *Alexander*, 817 F3d at 1182. However, "a deliberate attempt to delay proceedings to hamper the defense counts heavily against the government." *McNeely*, 336 F.3d at 827. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531; *see Alexander*, 817 F.3d at 1182. ("If the government intentionally delayed or negligently pursued the proceedings, however, prejudice may be presumed, and its weight in the defendant's favor depends on the reason for the delay and the length of the delay.").

Here, there is no indication that the Government intentionally delayed the trial. To the contrary, as the Government explains, the delay in this case was caused by a number of failures by different government entities, including the

MEMORANDUM DECISION AND ORDER - 7

Government and the Court itself.

First, the Order sealing the Indictment directed that the Indictment and case was to be unsealed "no later than November 20, 2019, at 8:00 a.m., MST." Despite this direction, the Indictment and case remained sealed until August 5, 2021.

Second, the Canyon County Jail failed to follow the instructions in the detainer to (1) forward a copy of the detainer to the IDOC and/or the Gem County Jail, and (2) to contact the Government when Defendant was transferred out of Canyon County Jail custody. If these instructions would have been followed, the Government would have notified that Defendant's state charges had been resolved and that Defendant had been transferred into the custody of the IDOC, triggering the Government to file a writ for Defendant's transport to federal court for his initial appearance in the present case. In addition, IDOC and the Gem County Jail would have been provided a copy of the Detainer.

Third, the housing of Defendant at the Gem County Jail for a year, rather than immediate placement at an IDOC facility, also caused created some confusion that contributed to the delay. Specifically, the Government represents that it has been informed by the Court on previous occasions that a writ should not be filed until the inmate is within an IDOC facility. The Government also represents that it has in the past requested a date and time for an initial appearance for a defendant

serving a sentence in county jail, and the Court has declined to set the initial appearance on the ground that the defendant was housed in a county jail rather than an IDOC facility. The Government further represents that notes from the handling Government attorney confirm this understanding of the Court's policy caused additional delay here: the handling attorney was waiting for Defendant's transfer from the Gem County Jail to an IDOC facility before requesting a writ for Defendant' transport for the initial appearance in federal court.

Fourth, IDOC did not receive a copy of the detainer when they received custody of Defendant in February 2020, or when Defendant was finally transferred to an IDOC facility in February 2021, and neither IDOC, the Gem County Jail, nor Canyon County Jail contacted the Government to inform it of the transfer. Indeed, Defendant did not have a detainer on him during the time he was in IDOC custody *until* after the writ was filed in the present case on July 13, 2021.

The Court finds that the delay that occurred while Defendant was in the custody of the Canyon County Jail—from November 2019, to February 2020—is not attributable to the Government as Defendant had pending state charges that were not yet resolved.

As to the delay between February 2020 and July 2021, this 17-month delay was caused by the negligent failure of several governmental entities, including the

Government and the Court itself. There is no doubt that the Government should have been more diligent in checking into the status of Defendant once Defendant was in IDOC custody. However, there is no evidence that there was any intentional conduct by the Government.

### C.     Prior Assertion of Speedy Trial Right

The Court now turns to the third factor in the *Barker* test—the defendant's prior assertion of the right to a speedy trial.

Defendant has submitted evidence of the following efforts:

- He tried to call the federal courthouse while at the Canyon County Jail but the phone system at the jail prevented him from getting through.

- In the spring of 2020, his partner at the time, Vanessa Beltran, tried to call the federal courthouse to ask about Defendant's case but was unable to reach anyone at the court.

- Defendant and Ms. Beltran called the federal defenders office repeatedly but were told that Defendant's case was not showing up in the "system," presumably because the case was sealed.

- Defendant and Ms. Beltran called an attorney, Courtney Peterson, but she was unable to take the case due to a conflict of interest.

- Ms. Beltran called an attorney in McCall with last name Erikson but Erikson

was also unable to find any indication that Defendant was facing federal charges.

Although the Government questions some of the representations made by Defendant and Ms. Beltran, the Court will assume that these representations are true for purposes of the present motion, with the following exception: To the extent that Ms. Beltran represents that she called the federal courthouse but was unable to reach anyone, the Court notes that the Clerk's office is open, and that Court staff is available to answer the phone, during Court business hours. Further, there is the ability to leave a voicemail in order to have someone at the Court return the call. Perhaps Ms. Beltran called the federal courthouse after Court business hours or on a weekend or holiday. However, even then, she could have left a voicemail and Court staff would have returned her call. Moreover, Ms. Beltran and Defendant both represent that they each made a single effort to call the Court and were either unable to get through (Defendant) or did not reach anyone (Ms. Beltran). Neither Defendant, nor anyone on Defendant's behalf, wrote a letter to the Court or otherwise contacted the Court and requested that Defendant's case proceed.

There is also no indication that Defendant, or anyone on Defendant's behalf, reached out to the U.S. Attorney's Office, or called the number clearly listed on the detainer, to ask about the case and request that the case proceed. As Defendant

himself admits, he had his copy of the detainer with him the entire time. And, in the words of defense counsel, Defendant was "[e]very night, staring at the looming uncertainty of his federal paperwork," the detainer. Defendant could have easily called the number clearly listed on that detainer and requested his case proceed. He failed to do so.

The Court is not convinced that the efforts made by Defendant are sufficient to assert Defendant's speedy trial right. The Court finds that this factor weighs against finding a constitutional speedy trial violation. *See United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003) (finding that a defendant's "prompt assertion of his speedy trial rights weighs neither for nor against" the defendant).

### D.     Prejudice

Finally, the Court turns to the final factor in the *Barker* test—the prejudice resulting from the delay.

"The amount of prejudice a defendant must show is inversely proportional to the length and reason for the delay." *Alexander*, 817 F.3d at 1183. "[T]o warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Doggett*, 505 U.S. at 657. *Barker* identified three interests to guide a court's inquiry regarding prejudice: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that

the defense will be impaired." *Barker*, 407 U.S. at 532. The last interest—the ability of a defendant to prepare his or her defense—is the most important interest. *Id.*

Here, Defendant focuses only on the second interest—anxiety and concern of the accused—in support of his claim of prejudice. He contends that he has suffered extreme anxiety, ruined relationships, and a profound disruption to his rehabilitation. He also points out that he was placed at the "farm" when he began being housed at the IDOC facility, which allowed him to work in the community, but that he lost that privilege when the writ was issued for his initial appearance in federal court. This type of harm is typical of any other arrestee awaiting trial and is insufficient, on its own, to demonstrate prejudice warranting dismissal. *See United States v. Frias*, 893 F.3d 1268, 1273 (10th Cir. 2018) ("As to the second interest, anxiety and concern of the accused," the defendant "must show 'some special harm which distinguishes [their] case" from that of others awaiting trial.).

Moreover, this loss of privilege to work in the community results not from the delay between the Indictment and the trial, but instead from the delivery of a federal detainer to IDOC. As discussed above, that detainer should have been delivered to IDOC when custody of Defendant was transferred. However, the Canyon County Jail failed to call the Government when custody of Defendant was

**MEMORANDUM DECISION AND ORDER - 13**

transferred to IDOC and failed to provide a copy of the detainer to IDOC, as instructed in the detainer. These *failures*—and the lack of IDOC's knowledge that there was a detainer—allowed Defendant to be placed at the farm, and to work in the community. However, once IDOC received a copy of the detainer, Defendant's ability to work in the community was revoked.

Turning to the other potential aspects of prejudice discussed in *Barker*, Defendant does not claim, and the Court does not find, that the delay has created oppressive pretrial incarceration. During the entire 22-month delay since Defendant was indicted, he has been on either pre-trial detention for state charges or serving a state sentence. Moreover, Defendant is not eligible for parole on the state convictions until 2022.

Finally, Defendant does not claim, and the Court does not find, that Defendant's ability to prepare his defense has been impaired by the delay. Thus, the most important aspect of prejudice to be considered by the Court is entirely missing in this case.

After weighing the *Barker* factors, the Court finds that Defendant was not deprived of his constitutional right to a speedy trial. *See Gregory*, 322 F.3d at 1162 (constitutional right to speed trial not violated in absence of showing of particularized prejudice when the Government's negligence caused a 22-month

delay).

## ORDER

**IT IS ORDERED that** Defendant's motion to dismiss (Dkt. 18) is **DENIED**.

DATED: September 16, 2021

B. Lynn Winmill
U.S. District Court Judge